## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

No. 7:13-CV-40-FL

| | |
|---|---|
| IRENE HITCHENS, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings

[DE-24, DE-29] pursuant to Fed. R. Civ. P. 12(c). Claimant Irene Hitchens ("Claimant") filed this

action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her

application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental

Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending

motions are ripe for adjudication. Having carefully reviewed the administrative record and the

motions and memoranda submitted by the parties, the court recommends denying Claimant's Motion

for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and

upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 23, 2010.

(R. 11, 100-03). Claimant also filed for SSI on July 30, 2010. (R. 11, 270-72). In both claims,

Claimant alleged disability beginning August 1, 2009. (R. 11, 100, 270). Her claims were denied

initially on February 1, 2011 (R. 11, 41-44, 273-80, 292), and upon reconsideration on April 21,

2011 (R. 11, 46-48, 285-89). A hearing before the Administrative Law Judge ("ALJ") was held on August 23, 2012, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 290-334). On October 17, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 8-22). On January 16, 2013, the Appeals Council denied Claimant's request for review. (R. 5-7). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in

2

crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently
> working; and (2) must have a "severe" impairment that (3) meets or exceeds [in
> severity] the "listings" of specified impairments, or is otherwise incapacitating to the
> extent that the claimant does not possess the residual functional capacity to (4)
> perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails

at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of

the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other

work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of

functional limitation resulting from a claimant's mental impairment(s): activities of daily living;

social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§

404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3),

416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of

Claimant's residual functional capacity ("RFC"), Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s

3

Mem.") [DE-25] at 18-21; (2) failure to give proper weight to a treating physician's medical opinion, *id.* at 21-23; (3) improper assessment of Claimant's credibility, *id.* at 23; (4) use of "unlawful standards" in determining that Claimant's depression was not a severe impairment at step two, *id.* at 24; and (5) failure to pose a hypothetical to the VE that adequately reflected Claimant's RFC, *id.* at 24-25.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant was no longer engaged in substantial gainful employment. (R. 13). Next, the ALJ determined that Claimant had the following severe impairments: chronic lower back pain due to spondylosis and sacroiliitis, obesity, and chronic pain syndrome. (R. 13-14). The ALJ also considered claimant's reported depression and anxiety, but found that neither ailment was severe. (R. 14). At step three, the ALJ concluded that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation of extended duration. (R. 15-16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

4

ability to perform light work[1] with the following additional restrictions:

> [Claimant] requires a sit/stand option, provided that she would not be changing position more frequently than every 30 minutes. She is limited to no more than occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and/or crawling, but no climbing of ladders, ropes, or scaffolds. She must avoid concentrated exposure to workplace hazards, such as unprotected heights and dangerous moving machinery. Finally, she is capable of performing simple, routine, and repetitive tasks.

(R. 16). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 16-20).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as an attendant at a children's group home, cashier/checker, fast food worker, school child care attendant, or home health aide. (R. 20). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21-22).

## B.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 40 years old and unemployed. (R. 298, 301-02). Claimant testified that she graduated from high school and completed some college work in a nursing program. (R. 298). Claimant was last employed in 2009 with Bridges Group Home, where her duties included in-home care, such as cleaning, dressing, and

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

cooking, for a disabled client. (R. 124-31, 299). Claimant's past work experience also includes jobs as a product packager and line employee, fast food worker, cashier, and behavioral technician. (R. 124-31, 299-301). Claimant testified that her back pain forced her to quit her last job. (R. 302).

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. These medical conditions include back pain, right leg pain, obesity, and depression. (R. 302-16). Claimant testified that she is unable to work due to pain in her back which radiates down her right leg. Claimant stated that the problems with her back began with a car accident in 2004 (R. 302-03), but increased in intensity in 2009 (R. 304-05). She describes her pain as regularly being seven (7) or eight (8) on a ten-point pain scale while treating with medications, but that without medications, her pain would generally be higher. (R. 310). Claimant stated the pain is sharp, it radiates down her right leg all the way to her foot, and it is constant. (R. 317). The pain prevents Claimant from performing activities such as lifting furniture or anything weighing more than 10 to 15 pounds, and that activities around the house take her a little longer as a result. (R. 311-12). She also states that household activities, such as hanging laundry or sweeping and mopping the floor, exacerbate the pain. (R. 318-19). The pain is so intense that sometimes it forces Claimant to hold her 13-pound grandson on the other side of her body. (R. 312). The pain prevents Claimant from walking more than approximately one block before she must stop and rest. (R. 320). To manage her symptoms, Claimant has taken a number of medications, with a recent change in medications, and received injections and ablations in her back. (R. 317, 322). Despite the treatment, Claimant feels that her pain worsened – specifically, the pain in her leg did not begin until after she sought treatment for her back. (R. 322).

Claimant also described her depression. Claimant attributes her separation from her husband,

6

lack of employment, and constant pain as the primary triggers for her depression. (R. 313). Claimant separated from her husband due to verbal abuse. (R. 251). She also noted that her husband's heart attack was a cause of her depression. (R. 254). Claimant sought treatment at Evergreen Behavioral Management for depression shortly before the administrative hearing. *Id.* Treatment consists of meetings with counselors and medication. (R. 313-14). Since Claimant only began the treatment a few months before the hearing, she could not determine whether the treatment was proving helpful. (R. 314, 321). She stated that she sometimes still felt depressed. (R. 321).

Claimant alleges a number of functional limitations as a result of her conditions. She currently lives at home with her husband and three sons, despite having previously been separated from her husband. (R. 311). Claimant's typical day involves performing various household chores, such as cleaning the house, cooking, and washing clothes. *Id.* Claimant requires help with heavier chores around the house, which she receives from her live-in sons on a daily basis, with additional help from her daughter on weekends. (R. 319). Claimant estimated that she could perform jobs that did not involve standing or sitting for extended periods of time, but could tolerate sedentary employment if given the opportunity to stretch her legs for 10 to 15 minutes. (R. 316). She does not think that she could perform duties that involve twisting or turning. *Id.* Claimant's new pain medications, which she takes three times daily, make her drowsy for up to 30 minutes after each dose. (R. 318).

## C. Vocational Expert's Testimony at the Administrative Hearing

Leanna Hollenbeck testified as a VE at the administrative hearing. (R. 324-30). After the VE's testimony regarding Claimant's past work experience (R. 325-27), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant

7

and posed two (2) hypothetical questions. First, the ALJ asked whether the individual could perform

Claimant's past relevant work having the physical capacity to perform light work and assuming

> The individual would need a sit/stand option. The individual from a postural standpoint would be limited to no more than occasional climbing ramps and stairs. No climbing ladders, ropes or scaffolds. Occasional balancing, stooping, kneeling, crouching, crawling. So occasional postural activities excluding climbing ladders, ropes, and scaffolds. Avoid concentrated exposure to workplace hazards such as dangerous moving machinery and unprotected heights. The hypothetical individual would be capable of performing simple, routine, and repetitive tasks.

(R. 327). The VE responded that such an individual could not perform Claimant's past relevant work. *Id.* The ALJ then asked whether there was any other light work that the hypothetical individual could perform. (R. 327-28). The VE responded in the affirmative and gave examples of jobs that exist in significant numbers in the regional and national economies, including mail clerk (DOT # 209.687-026), parking lot attendant (DOT # 915.473-010), and office helper (DOT # 239.567-010). (R. 328). The ALJ then asked how each of the cited jobs would incorporate a sit/stand option. (R. 328-29). The VE responded that, in her professional experience, each job was different: mail clerks could sit or stand while sorting mail and would occasionally be asked to walk around throughout the day; office helpers typically sit while answering telephones but also have standing duties; parking lot attendants sit while engaging in transactions but are free to stand in between customers. (R. 329). The VE estimated that each job would allow for a change in position "at least every 30 minutes, if not more frequently." *Id.* The ALJ then expanded upon the first hypothetical by adding the restriction that the hypothetical individual's symptoms and medications would prevent the individual from staying on task for up to two hours at a time during the eight (8) hour work day. (R. 330). The VE responded that such a restriction would prevent the individual from maintaining competitive employment in any of the identified jobs. *Id.*

8

## V. DISCUSSION

### A. The ALJ's RFC Assessment.

Claimant primarily contends first that the ALJ improperly assessed her RFC by finding that she was capable of performing light work. Pl.'s Mem. at 18-21. The court disagrees and finds that the ALJ's RFC assessment is supported by substantial evidence.

An individual's RFC is defined as the capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). Sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

9

In this section of Claimant's brief contesting the ALJ's RFC determination, Claimant also asserts a number of additional arguments as to how the ALJ erred in determining her RFC. First, Claimant contends that the ALJ improperly found that the requirements for Listings 1.02, 1.04, and 12.07 were not met. Next, Claimant argues that the ALJ failed to conduct a function-by-function assessment of Claimant's RFC. Third, Claimant argues that the ALJ disregarded the opinions of her treating physicians in assessing her RFC. Fourth, Claimant contends that the ALJ failed to consider all evidence in the record and to discuss the evidence in narrative fashion, as required by SSR 96-8p. Finally, Claimant argues that the ALJ erred in finding Claimant's statements about her ailments not credible. As Claimant raises the treating physician and credibility arguments separately in subsequent portions of the brief, the court reserves analysis of these arguments for later discussion. As for the remaining arguments, the court finds that they have no merit and that the ALJ committed no reversible error in assessing Claimant's RFC.

### i.   Listing arguments

The court first addresses Claimant's listing arguments appearing in this section before proceeding to a discussion of Claimant's RFC-related arguments. Claimant argues that the ALJ improperly found that her impairments were not sufficient to satisfy the requirements of Listings 1.02, 1.04, and 12.07, as defined in 20 C.F.R. § 404, Subpart P, App. 1.[2] The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant

---

[2] The ALJ determines whether Claimant's impairments meet or medically equal the Listings at step three, prior to conducting the RFC assessment before step four. As Claimant raises the listings argument under the RFC assessment heading, it will be addressed here.

is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

As indicated, even if an impairment fails to meet a listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria of the particular listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (noting medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531-32.

Listing 1.02, entitled "major dysfunction of a joint(s)," consists of two major subparts, Listings 1.02A and 1.02B. If either is satisfied, the claimant is regarded as disabled. Listing 1.02A requires (1) chronic joint pain and stiffness, (2) signs of limitation of motion or other abnormal motion of the affected joint(s), (3) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint(s) and (4) involvement of one major peripheral weight-bearing joint resulting in an extreme limitation of the ability to ambulate. 20 C.F.R. § 404, Subpt. P., App. 1, § 1.02A. Listing 1.02B requires all of the first three requirements from 1.02A with a different fourth requirement of "involvement of one major peripheral joint in each upper extremity, resulting in inability to perform fine and gross movements effectively." *Id.* § 1.02B. The listings define "an inability to perform fine and gross movements effectively," as used in Listing

11

1.02B, as an "extreme loss of function in both upper extremities" such that the individual is not "capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." *Id.* § 1.00B2c. For example, where the individual is unable to perform the activities of preparing a simple meal, managing personal hygiene, sorting and handling papers, or placing files in a cabinet above waste level, the individual is unable to perform fine and gross movements effectively. *Id.*

To satisfy Listing 1.04, a claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with one of the following:

A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, Subpart P, App. 1, § 1.04.

The listings define the inability to ambulate effectively, as used in Listing 1.02A and 1.04C,

12

as "an extreme limitation on the ability to walk" requiring that the individual have insufficient lower-body strength to walk without the assistance of a hand-held device. 20 C.F.R. § 404, Subpart P, App. 1, § 1.00B2b. The listings further clarify that effective ambulation requires that the claimant be able to walk effectively enough to carry out activities of daily living and to reach work or school without the help of another person. *See id.* Examples of ineffective ambulation include the inability to walk without the use of a walker, two canes or crutches, inability to walk over uneven surfaces or use stairs with the help of a handrail at a reasonable pace, perform routine activities such as shopping or banking, or use public transportation. *Id.* The ability to move around the house without the assistance of a cane or other assistive device does not establish the ability to ambulate effectively. *Id.*

While no listing for chronic pain disorder exists, the ALJ considered this condition under Listing 12.07. (R. 15-16). Listing 12.07 encompasses chronic physical symptoms for which there is no physiological explanation. To meet Listing 12.07, both the A criteria and B criteria must be met. Listing 12.07A can be met in any of the following three ways: (1) a history of symptoms beginning prior to age 30 and lasting for several years that have caused the individual to take medicine frequently, see a physician, or alter life patterns significantly; (2) persistent nonorganic disturbance of vision, speech, hearing, use of a limb, movement and control, or sensation; or (3) unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury. 20 C.F.R. § 404, Subpt. P., App. 1, §§ 12.07A1-3. To meet Listing 12.07B, at least two of the following symptoms must be shown: (1) marked restrictions in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of

13

decompensation, each of extended duration. *Id.* §§ 12.07B1-4. A marked limitation is one which is more than moderate but less than extreme. *Id.* § 12.00C.

Here, the ALJ determined that Claimant did not meet or medically equal Listings 1.02, 1.04, and 12.07. (R. 15-16). In determining that Claimant did not meet either prong of Listing 1.02, the ALJ found that Claimant was able to ambulate effectively and to perform fine and gross movements. (R. 15). The ALJ also found that the record did not confirm nerve root compression with the required signs or symptoms, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication and that, therefore, Listing 1.04 was not met. (*Id*). Finally, in finding that Listing 12.07 was not met, the ALJ determined that Claimant experienced only mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining performance, persistence, and pace, and no episodes of decompensation for extended-duration. (R. 15-16). As demonstrated below, these findings are supported by substantial evidence.

The ALJ's findings that Claimant was able to ambulate effectively and could perform fine and gross movements are supported by substantial evidence. Claimant does not require a cane or other assistive device for ambulation. (R. 209). Claimant consistently registered a steady or normal gait (R. 188, 193, 198, 209), perfect muscle strength, *id.*, and a normal range of motion in her lower extremities on both sides of her body (R. 210). Additionally, both the consultative examination and DDS RFC assessment found that Claimant could walk and stand without issues. The consultative examiner found that Claimant is able to walk, bend, stoop, squat, rise, sit, and stand without issue and also noted a number of everyday activities that Claimant could perform. (R. 209-11). The DDS physician found that Claimant could stand for up to six (6) hours in an eight (8) hour workday. (R. 213). These records and opinions constitute substantial evidence supporting the ALJ's finding that

14

Claimant can ambulate effectively. Next, the ALJ's finding that Claimant could perform fine and gross movements is supported by substantial evidence. Claimant's bilateral range of motion in her upper extremities was normal. (R. 210). Claimant also consistently exhibited full muscle strength in her upper extremities. (R. 188, 193, 198). Finally, the consultative examiner found Claimant capable of both fine and gross movements in noting her ability to perform activities such as buttoning a shirt, dress and undress, turn a doorknob, and pick up coins and pencils. (R. 209). These records and findings constitute substantial evidence that Claimant was able to perform fine and gross movements with her upper extremities. The ALJ's finding that Claimant did not meet or medically equal Listing 1.02, therefore, is supported by substantial evidence.

Further, the ALJ's findings that Claimant did not suffer from any of the back impairments enumerated in Listing 1.04 is supported by substantial evidence. An x-ray taken in August 2009 gave the impression of "very mild spondylosis." (R. 170, 186). An MRI taken a month later showed Claimant's vertebrae in alignment, no evidence of disc bulging, and no spinal stenosis. (R. 185). A 2010 x-ray of Claimant's lumbar spine also revealed mild spondylosis. (R. 181). Finally, during the consultative examination in April 2011, Dr. Locklear found some mild marginal osteophytic spurring to have occurred, but that overall, "no acute or significant interval change" had occurred from the prior examination in 2009. (R. 211). No other evidence in the record indicates that Claimant suffered from the requisite ailments. Therefore, the ALJ's finding is supported by substantial evidence and the determination that Claimant did not meet or medically equal Listing 1.04 is without error.

Last, the ALJ's finding that Listing 12.07 was not met or medically equaled is supported by substantial evidence. The ALJ considered the B criteria of Listing 12.07 and found that Claimant

15

experienced mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining performance, persistence, and pace, and no episodes of decompensation for extended-duration. (R. 15-16). As discussed above, Dr. Locklear found in his consultative examination that Claimant was able to perform a variety of daily activities without issue, such as dressing and undressing, tying shoes, and dialing a phone. (R. 209). Further, Dr. Locklear noted that Claimant could walk, sit, stand, and rise without issue. *Id.* The DDS evaluation concluded that Claimant had some mild exertional limitations, but no postural, manipulative, or communicative limitations. (R. 213-216). Finally, Claimant's pain generally appears to be in good control or only slightly uncontrolled, with some exceptions where Claimant does not take her medication as prescribed. *See* (R. 171, 173, 176-77, 182, 232, 263, 265-66, 268-69) (pain control is good); (R. 174) (pain slightly uncontrolled where Claimant was not using methadone); (R. 224) (moderately uncontrolled where Claimant missed appointment and was out of medication); (R. 226) (pain slightly uncontrolled where Claimant refused ablation procedure). Where Claimant's pain was not in control, injections to her lower back alleviated the pain for up to six months. (R. 226). These considerations constitute substantial evidence that Claimant suffers only mild to moderate restrictions in the B criteria categories. Therefore, Claimant's argument that the ALJ improperly found that her conditions did not meet or medically equal Listings 1.02, 1.04, and 12.07 is without merit.

### ii. *Remaining RFC arguments*

Next, Claimant argues that the ALJ erred by "failing to find a list of factors supporting his residual functional capacity" assessment. Pl.'s Mem. at 18. As the regulations say nothing about a list of factors supporting the RFC evaluation, *see* 20 C.F.R. §§ 404.1545, 416.945, this argument

16

appears to contend that the ALJ failed to evaluate Claimant's RFC in a function-by-function analysis as required by SSR 96-8p. In SSR 96-8p, the ALJ is required to identify a claimant's work-related functional limitations and then assess the claimant's work abilities on a function-by-function basis, including physical abilities, mental abilities, and any other abilities affected by impairments. 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545 (b)-(d), 416.945(b)-(d). However, remand is not always the result where the ALJ has failed to engage in the function-by-function assessment, especially where the RFC as a whole is supported by substantial evidence. *See West v. Astrue*, No. 8:10-1442-DCN-JDA, 2011 WL 4527355, at *11-12 (D.S.C. June 6, 2011) (denying the claimant's argument that the ALJ improperly failed to assess her limitations on a function-by-function basis where the RFC as whole was supported by substantial evidence); *see Broussard v. Colvin*, No. 5:12-CV-398-FL, 2013 WL 5370592, at *3 (E.D.N.C. Sept. 24, 2013) (holding that the "failure to articulate a function-by-function analysis is harmless error where the ALJ's ultimate finding is supported by substantial evidence in the record.") (quoting *Mascio v. Colvin,* 2:11–CV–65–FL, 2013 WL 3321577, at *3 (E.D.N.C. July 1, 2013)). Moreover, "this court previously has held that SSR 96–8p does not require an ALJ to produce a detailed statement in writing—a true 'function-by-function' analysis, and that a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *See Broussard,* 2013 WL 5370592, at *3 (quoting *Mascio*, 2013 WL 3321577, at *3)(internal quotations omitted).

Here, the ALJ engaged in a proper function-by-function analysis. First, the ALJ considered Claimant's physical ailments. (R. 16-20). The ALJ found that, based upon the evidence in the record, Claimant was able to sit and stand for up to 30 minutes at a time for a total of six (6) hours in an eight (8) hour workday, walk for up to two blocks, lift and carry up to ten (10) pounds

frequently, and could perform activities involving pushing and pulling, other than climbing ropes and ladders. (R. 16, 19-20); SSR 96-8p, 1996 WL 374184, at *5 (noting the seven strength demands that the ALJ should assess). In order to consider those functions, the ALJ engaged in a narrative discussion of the evidence of record. (R. 16-20). Further, at step three, the ALJ assessed Claimant's mental abilities and concluded that there was no significant mental impairment. (R. 15-16). As will be discussed below, the RFC evaluation as a whole is supported by substantial evidence and Claimant's argument as to this issue is without merit. *See West*, 2011 WL 4527355, at *12.

Last, Claimant argues that the ALJ failed to consider all evidence in the record and to discuss it in narrative fashion. Pl.'s Mem. at 20. The ALJ is required to provide a narrative discussion of how the evidence of record supports his or her conclusions, including both medical and non-medical evidence. SSR 96-8p, 1996 WL 374184, at *7. The RFC assessment must discuss why symptom-related functional limitations can or cannot be accepted as reasonably consistent with medical and other evidence and must consider any medical opinions in the record. *Id.*

Here, the ALJ properly considered all evidence in the record and presented the findings in a narrative format. (R. 16-20). Specifically, the ALJ considered the records from the Julian T. Pierce Health Center (R. 153-70), the Pain Treatment Center (R. 174-86, 220-42, 257-69), and Robeson Health Care Corp (R. 187-205). (R. 16-20). The ALJ did not mention specifically the records from Evergreen Behavioral Management, Claimant's mental health treatment facility, in his RFC analysis because at step two, the ALJ considered the evidence at length and found that Claimant's depression was not a severe impairment. (R. 14). The ALJ also noted the consultative examiner's evaluation (R. 206-11), and a DDS physician's RFC evaluation (R. 212-19). (R. 16-20). While not specifically discussing the notes from every visit, the ALJ properly evaluated the entire

18

record and noted relevant portions. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (noting the ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Thus, the ALJ properly considered the evidence in the record, and his decision evidences as much.

Further, for each conclusion he made, the ALJ properly presented a discussion of how the evidence supports that conclusion. In finding that Claimant could sit or stand for up to 30 minutes at a time during work activities, the ALJ cited the consultative examiner's evaluation of Claimant, which found that Claimant could sit and stand without issue and could stand for up to an hour; Claimant's testimony, which established that Claimant could perform a variety of household chores and that she could perform jobs that did not require her to maintain a sitting or standing position for the entire eight (8) hour workday; and records from Claimant's pain treatment center, which generally established that Claimant's pain was well-controlled when medication was taken properly. *See* (R. 16-20, 171, 173, 176-77, 182, 209-11, 232, 263, 265-66, 268-69, 311-13, 315-16). The ALJ's conclusion that Claimant could lift up to 10 pounds frequently and 20 pounds occasionally was supported by evaluations finding that Claimant could lift 25 pounds frequently (R. 213) and Claimant's own testimony that she could lift up to 15 pounds (R. 312). (R. 19). Finally, the ALJ's finding that Claimant could perform some pushing and pulling is supported by the DDS RFC and consultative evaluations, which found that Claimant could perform basic work activities and had minimal manipulative and push and pull limitations, (R. 209-11; 213-17), and Claimant's admitted

19

activities of hanging laundry and doing chores around the house (R. 311). (R. 19-20). Combined with the evidence supporting other findings noted above, the record contains substantial evidence supporting the RFC assessment as a whole.

Thus, because substantial evidence supports the ALJ's RFC assessment as a whole, and the ALJ properly evaluated Claimant's ailments in a function-by-function analysis and presented his findings in a proper narrative fashion, Claimant's remaining RFC arguments are without merit.

## B.    The ALJs' treatment of the medical opinion evidence.

Claimant next contends that the ALJ failed to assess the opinions of Claimant's treating physicians, Dr. Aaron Gootman from the Pain Treatment Center, Myra Robinson, LPC & NCC, and Margaret Davis, FNP, from Evergreen Behavioral Management, as well as another of Claimant's treatment facilities, Robeson Health Care Corporation. Pl.'s Mem. at 19-20, 21-23. The court disagrees and finds that there were no medical opinions from these sources for the ALJ to consider.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.

20

1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Medical records, while constituting evidence which the ALJ must consider, are "not necessarily 'medical opinion' evidence as contemplated by the regulations." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at \*11 (E.D.N.C. Aug. 30, 2013), *memorandum and recommendation adopted by* 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013). Therefore, "[o]nly those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Id.* (citing *McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012); *Valdez v. Comm'r of Social Sec.*, No. 12-13215, 2013 WL 3013668 (E.D. Mich. June 18, 2013)).

Here, the records that Claimant contends should have been assigned controlling weight are not medical opinions. First, the records from Dr. Gootman and the Pain Treatment Center are a series of treatment notes from Claimant's visits for pain management and records of Claimant's procedures for injections and ablations. (R. 174-86, 220-42, 257-69). In his notes, Dr. Gootman provides a treatment plan and prescription during each visit, but nowhere expresses a judgment about

21

the severity of Claimant's impairments, functional limitations, or overall prognosis. These records therefore do not qualify as medical opinions as defined by the regulations. The records from Evergreen Behavioral Management and Robeson Health Care similarly contain reports of Claimant's visits, Claimant's subjective descriptions of her symptoms, and diagnosis and medication history, yet express no opinion about Claimant's impairments, limitations, or prognosis. (R. 187-205, 243-56). Indeed, Claimant points to no record from these facilities which expresses a judgment. Therefore, Claimant's argument that these records constitute medical opinions for the ALJ to weigh is without merit.

Further, as in *Love-Moore*, the records Claimant cites do not support her conclusion that she is unable to work. 2013 WL 5366967, at *12. The notes from Claimant's visits to Robeson Health Care consistently note normal gait, normal muscle strength in both the upper and lower extremities, and a full range of motion for appointments from October 2010 until August 2011. (R. 188, 193, 198). An appointment in September 2010, also noted the lack of edema in Claimant's lower extremities. (R. 202). The records from the Pain Treatment Center note that Claimant experiences pain, the methods used to control that pain, and the different medications taken by Claimant and their side effects. (R. 171-86, 220-42, 257-69). The records do not, however, note any functional limitations evidencing an inability to work. Last, the records from Evergreen Behavioral Clinic do not show any functional limitations; do not show Claimant being a harm to herself or others (R. 248); and diagnose claimant with general anxiety disorder and a single, mild episode of major depressive disorder (R. 250). These records all which substantiate the ALJ's finding that there is no indication that Claimant's depression will continue. (R. 14, 243-56).

Finally, to the extent that the records from Evergreen Behavioral Management constitute an

22

"opinion," they were not offered by an acceptable medical source and, therefore, are not entitled to heightened weight. In order to constitute an acceptable medical opinion, the statement must have been offered by a physician, psychologist, or other acceptable medical source. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly acceptable medical sources can give us medical opinions."). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *Id.* §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). Nonetheless, opinions from other health care providers who are not acceptable medical sources provide valuable evidence, which the ALJ must consider, on issues such as impairment severity and functional limitations. *Id.* §§ 404.1513(d), 416.913(d); SSR 06-03, 2006 WL 2329939, at *3-4; *see also Foster v. Astrue*, 826 F. Supp. 2d 884, 886-87 (E.D.N.C. 2011) (remanding where the ALJ failed to consider the opinion of a non-acceptable medical source who had treated the claimant). Here, the treatment records show that Claimant was seen, and the records prepared, by two individuals at Evergreen: Myra Robinson, LPC & NCC, and Margaret Davis, FNP. (R. 253, 256). Ms. Robinson is a Licensed Professional Counselor and a National Certified Counselor, but no evidence suggests that she falls into one of the enumerated categories of acceptable medical sources above. (R. 253). Ms. Davis is a Family Nurse Practitioner, also not an acceptable medical source, as defined in the regulations. (R. 256). The ALJ did, however, consider these records, as evidenced by his evaluation of the severity of Claimant's depression. (R. 14). Therefore, even if the records from Evergreen could be considered medical opinions, they were not authored by acceptable medical sources and are therefore not entitled to any heightened weight.

## C. The ALJ's Assessment of Claimant's Credibility.

23

Claimant next contends that the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 20-21, 23. The court disagrees and finds that the ALJ properly assessed Claimant's credibility.

It is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the

24

ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at \*3.

In assessing Claimant's allegations, the ALJ made the step one finding that Claimant's medically determinable impairments could cause her alleged symptoms. (R. 17). At step two, however, he found Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms not fully credible to the extent they conflicted with the RFC determination. *Id.* In making this credibility assessment, the ALJ identified two major reasons for finding Claimant's statements only partially credible. First, the ALJ found that Claimant's pain was managed sufficiently by medication and treatment to permit some work activity. (R. 19). As discussed above in the RFC evaluation, that finding is supported by substantial evidence in the record. Second, the ALJ found that Claimant's admitted daily activities were inconsistent with the inability to work. *Id.* The ALJ noted that Claimant admitted to a variety of activities, such as washing dishes and hanging clothes out to dry. (R. 19, 311). The ALJ also considered that Claimant reported to the consultative examiner that she could lift up to 20 pounds and could ascend up to five steps. (R. 19; 209-11). Finally, the ALJ noted the consultative examiner's findings of full range of motion in lumbar areas, with no indication of limitations due to pain, normal gait, and no need for an assistive device for ambulation. *Id.* These records constitute substantial evidence supporting the ALJ's finding that Claimant's daily activities were inconsistent with an inability to work. Thus, the record contains substantial evidence which supports the conclusion of the ALJ that Claimant's statements were only partially credible.

Claimant nonetheless argues that the ALJ failed to consider her consistent statements of pain

25

and the disabling effects that the pain had on her. Contrary to Claimant's assertion, the ALJ did consider Claimant's testimony: as noted, the ALJ expressly considered Claimant's admitted activities as well as her description of the pain and the effects it had on her (R. 16-17, 19). Pain, by itself, does not establish a disability per se; rather, in order to show disability, the claimant must show some related functional limitations precluding the ability to work. *Craig*, 76 F.3d at 592 (citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (internal citations omitted)). Here, as found by the ALJ, Claimant's admitted activities are inconsistent with the functional limitations she alleges. Claimant can, for example, lift up to 15 pounds, hang laundry, walk up to two blocks, and perform other work around the house. (R. 311-12, 318-19). Finally, "subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984). The objective medical evidence in the record establishes that Claimant can lift up to 20 pounds, walk without the help of an assistive device, and perform a variety of normal activities and has retained full range of motion and muscle strength in affected areas with no significant change in physical ailments between 2009 and 2011. (R. 209-11). Claimant also consistently exhibited normal gait and normal muscle strength in upper and lower extremities. (R. 188, 193, 198). These objective findings counter Claimant's subjective allegations of pain and the ALJ was permitted to weigh this is assessing Claimant's credibility. Therefore, Claimant's argument lacks merit.

**D. The ALJ's Evaluation of Claimant's Depression as a Nonsevere Impairment.**

Claimant next contends that the ALJ used unlawful standards in finding that her depression was not a severe impairment. Pl.'s Mem. at 24. The court disagrees and finds that the ALJ properly concluded that Claimant's depression was not a severe impairment.

26

In finding that Claimant's depression was not a severe impairment, the ALJ considered the records from Evergreen Behavioral Clinic. In order to determine whether the ALJ reached his decision based on substantial evidence, the ALJ must include "in the text of h[is] decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). Without a statement of reasons, this Court cannot determine whether the ALJ based a decision on substantial evidence. *See id.*; 5 U.S.C. § 557(c)(3)(A) (requiring decisions to include "a statement of findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record"). The ALJ gave two reasons for finding that the impairment was not severe: (1) the evidence provided was not prepared by acceptable medical sources; and (2) the evidence showed that the ailment was of recent origin and did not establish that the problem would last for more than 12 months. (R. 14).

First, as demonstrated above, neither of the examiners at Evergreen constituted an acceptable medical source. Therefore, the reports that they prepared cannot, by themselves, establish the existence of a medically determinable severe impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06-03p, 2006 WL 2329939, at *2.

Second, the ALJ's determination that Claimant's depression was of recent origin and not expected to last more than 12 months is supported by substantial evidence. The only records noting Claimant's depression come from July 2012 and August 2012, both within one month of the administrative hearing. (R. 243-56). Since beginning treatment, Claimant stated that her condition had improved, though she noted at the hearing that it was too soon to say whether her medication was working. (R. 314); *see Finley v. Astrue*, No. 5:08-CV-209-D, 2009 WL 2489264, at *8 (observing that "it is well established that '[i]f an impairment can be reasonably controlled by

medication or treatment, it is not disabling.'" (quoting *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986)). Claimant did, however, live with her husband and children at the time of the hearing (R. 311), despite having stated that her separation from her husband had been one of the primary triggers for her depression (R. 251). These considerations constitute substantial evidence supporting the ALJ's reasoning for finding Claimant's impairment not severe.

Claimant counters that her medical history and testimony at the hearing show that she underwent treatment for pain for several years leading up to her treatment at Evergreen. The ALJ is directed to consider all of a claimant's impairments, individually and in combination, in determining whether a Claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). The ALJ did consider Claimant's allegations of pain, both at step two and prior to step four when determining Claimant's RFC. (R. 13-14, 16-20). The ALJ even concluded that Claimant's back pain was a severe impairment and, in so doing, concluded that there were significant effects on Claimant's ability to perform work activities. (R. 13-14). Finally, Claimant does not identify, nor did she testify to, any functional impairments resulting from her depression. Pl.'s Mem. at 24; (R. 313-14, 321). The ALJ, on the other hand, accounted for Claimant's mental limitations at steps three and four using the special technique. (R. 15). Thus, the ALJ utilized proper standards in determining that Claimant's depression was not a severe impairment and that determination is supported by substantial evidence.

## E. The ALJ's Hypothetical Questions to the VE.

Claimant finally argues that the ALJ posed hypothetical questions to the VE which did not contain all of Claimant's impairments. Pl.'s Mem. at 24-25. Claimant does not make clear which of her alleged impairments the ALJ failed to include. Nonetheless, the court disagrees with Claimant

28

and finds that the ALJ posed proper hypothetical questions to the VE.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992) (citation omitted). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson*, 434 F.3d at 659 (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record"). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Mixon v. Astrue*, No. 4:06-CV-249-FL, 2008 WL 111157, at \*9 (E.D.N.C. Jan. 8, 2008) (citing *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441, 445 (8th Cir. 1989)) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ") (internal citations omitted); *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible.").

29

Claimant argues that the ALJ asked hypothetical questions which did not relate all of Claimant's impairments. Pl.'s Mem. at 24-25. Claimant fails to identify which alleged impairment the ALJ neglected to mention when questioning the VE. As discussed above, *see supra* section V.C, the ALJ's RFC assessment is supported by substantial evidence. Here, the ALJ's hypothetical questions sufficiently covered the limitations that the ALJ found were supported by substantial evidence. The questions covered a sit/stand option, limited climbing and balancing activities, avoidance of workplace hazards, simple and routine tasks, and sufficiently defined the frequency with which the individual would need to alternate between a seated and standing position. (R. 327-30). In short, the questions asked of the VE covered all pertinent limitations noted in the RFC. As these limitations were all that the ALJ found to be true and those findings are supported by substantial evidence, the ALJ asked proper hypothetical questions of the VE and Claimant's argument is without merit. *Sobania*, 879 F.2d at 445.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-18] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-21] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

30

Submitted, this the 30th day of July 2014.

Robert B. Jones, Jr.
United States Magistrate Judge